## No. 11,669.

### HENRIETTA GUGLIELMI VS. LOUIS GEISMAR.

Notwithstanding a sale is *per aversionem,* and not, on that account, entitling the purchaser to any repetition of price on account of diminution in quantity of land received, yet a different question arises when, on trial, the fact is disclosed that there is a break in one of the boundaries. In such case the purchaser is entitled to go to the boundary, and if he can not, he has a legal claim for the deficiency in quantity.

APPEAL from the Twentieth Judicial District Court, Parish of Ascension.   *Guion, J.*

---

*R. N. Sims, H. Heidenhain* and *Dinkelspiel & Hart* for Plaintiff and Appellee.

*E. N. Pugh* and *J. L. Bradford* for Defendant and Appellant.

———

The opinion of the court was delivered by

WATKINS, J.    When this case was last before us the facts were carefully stated, and we need only make reference to our opinion. 46 An. 280.

The defendant resisted the executory proceedings of his vendor, seeking the foreclosure of a mortgage, on the ground that there was a deficiency in the quantity of land sold—the alleged deficiency being four hundred and sixty-three and seventy one-hundredths acres, and under his prayer for general relief he makes claim for a proportionate diminution of the purchase price.

The plaintiff tendered the exception that the defendant's opposition disclosed no right of action, on the ground that the sale was one *per aversionem*, and the land conveyed was embraced between well-defined boundaries; and that exception having been sustained and the suit dismissed, defendant appealed.

The governing principle of our decision is contained in the following extracts, viz.:

" If the sale was a sale *per aversionem*, and the title, as the issues are made, is valid as to all lands within the boundaries, *and there was no error regarding the boundaries themselves*, the exception was properly maintained by the court *a qua*. The decisions uniformly are that calls in a deed fixing the boundaries of the land conveyed by lands of adjacent owners will control, *when those boundaries are well defined;* and that where the metes and bounds are given by the deed, and the quantity of the tract of land, the former, *if they are well established*, will prevail, although there is a deficiency in the number of acres.    (Our italics.)

" In other words, if there be error as to quantity, but *none as to boundary*, the purchaser can not claim on account of diminution in the number of acres in the absence of all attempts at concealment and fraud."

Again: " We have not found a case in which it was held that the *established and well-known boundary line of the four sides of a tract of land* shall not control the location in a *bona fide* sale of land thus bounded.

"Courses, distances, admeasurements and ideal lines upon the

ground yield *to the known and fixed measurements*, whether natural or artificial.

"These being the g..verning principles, they must control the issues in the case at bar.

"The allegations being admitted as true, the plaintiff is, at this time, in the attitude of having admitted for the purpose of the exception *that a small portion of the land in question is public land, and that some of the land is in the possession of the owner of the Riverside plantation*."   (Our italics.)

Entertaining these views we reversed the judgment cf the court *a qua* and remanded the cause for trial on its merits, and in order that the fact be ascertained as to " how much, if any, of the land in question is public land " and *to what extent the Riverside plantation bounded in the rear the property in dispute.*

When the cause went back to the lower court, that question was tried and decided, and a second appeal on behalf of the defendant brings it here.

In his reasons for judgment the judge *a quo* says:

"I am satisfied from the evidence in this case that the boundaries of the *Waterloo* plantation as set forth in the act of sale were well established at the time of the sale "—describing them minutely as ascertained by the evidence adduced on the trial.

That the surveyor who made a plan of the property testified that the lands *in the rear of the rear boundary* of the plantation " were, in 1871, considered and known as part of the *Riverside* plantation." (Our italics.)

That " the record shows that a short time prior to the purchase by the defendant, Geismar, of the *Waterloo* plantation, *the owners of Riverside plantation were actually placed in possession of the lands lying immediately in the rear of said Waterloo plantation and of the (rear) boundary line*," etc. · (Our italics.)

· "It is true," says he, "that the testimony shows that since the sale to Geismar, defendant, two small tracts of land forming part of *Waterloo* plantation, viz.: eighteen and thirty-three one-hundredths (18 33-1C0) acres, *at the northwest rear* corner, and ten and seventy-eight one-hundredths (10 78-100) acres *at the northeast rear corner* of said plantation, making altogether twenty-nine and eleven one-hundredths (29 11-100) acres, have been declared subject to entry by the United States Land Department; but this quan-

tity of land of which the defendant has been evicted does not form one-fiftieth of the total superficial area of land conveyed to him," etc.

On this course of reasoning, predicated upon the facts detailed, the judge *a quo* dissolved the defendant's injunction *in toto*, directed the executory proceedings to be consummated by sale of the mortgaged property, with the exception of the small parcels of land described, taxing him with costs.

We understand from the argument in this court that appellant's counsel do not deny the correctness of the judge's statement of facts, but concede that it conforms to the evidence. They do not deny that the evidence establishes a sale *per aversionem*, but their contention is that the judge has drawn improper conclusions of law from the facts stated in his reasons for judgment.

To put the defendant's contention fairly, we make from their brief the subjoined extract, to-wit:

"But it is certainly not open to question that we did show, to the entire satisfaction of the court below, an eviction from a part of the land within those bounds. In other words, defendant Geismar sustained his injunction in part, and was clearly entitled to a judgment under Revised Civil Code 2506 (2482), for all costs, under No. 3 of that article, and under No. 4 for a credit on the note sued on for the pro rata price of the thirty acres lost by the eviction, with eight per cent. per annum interest from date of sale, and damages, if any were suffered. But the judge, confounding the sale with sales for quantity, under Civil Code 2494, and abandoning for the nonce the theory he was then acting on, that the sale was *per aversionem*, refused any relief for the eviction, because it was of a quantity far less than a twentieth of that called for in the title. Consistency required him, under Art. 2495, to hold that it was not a case of loss or diminution in *measurement*, but, under Arts. 2511 and 2514, a case for proportional restitution or remission of price because of *eviction*. Arts. 2494 and 2495 do not contemplate loss by *eviction*, but a loss suffered by vendee who buys under a deed calling for a certain amount of land and finds that the true measurement is more than a twentieth short. And Arts. 2506, 2511 and 2514 do not contemplate loss to the vendee by difference in the amount expressed in the deed and that actually found in the tract, but the loss he suffers when it is shown that his vendor had no title to a part of what he undertook to con-

vey.   These last three articles are parts of one harmonious whole or plan, and might be expressed in one.   If the eviction be partial, under Art. 2511 the vendee enjoys the option to keep the residue of the land and demand pro rata restitution under Art. 2514, with the other relief contemplated in Art. 2506; or he may, under Art. 2511, show that the eviction has deprived him of his principal inducement to the purchase, and demand, for that reason, cancellation of the sale.   In the present case, the court having found the fact of eviction from thirty acres, we are in a position to demand, *under the prayer for general relief*  *  *  *  that the cause be remanded, to let in proof on this point."

On this theory they submit the following propositions, viz. :

"If the court be of the opinion, after examining the proof, that the sale was by metes and bounds, and affirm the judgment on that point, in that event we ask that it reverse it as to the residue, and give us judgment for—

"1. The sum of three hundred and seventy-seven dollars and ninety-nine cents, being the pro rata value of twenty-nine and 11-100 acres, from which we suffered eviction.

"2. Interest on that sum at eight per cent. per annum, from February 18, 1891, till paid.

"3. Costs of executory proceedings and the injunction suit in the District Court.

"4. Release from the obligation of paying five per cent. for attorney's fees to plaintiff in executory proceedings.

"5. Costs of appeal."

Indeed, counsel for defendant subsequently state in their brief (p. 7) that "the plaintiff in injunction accepts the finding of the District Judge to the effect that the sale was one by metes and bounds," etc., but with full reservation of his rights above referred to, as resulting from the alleged error of the judge in respect to his conclusions of law.

At the outstart we have confronting us the following established facts as stated by the judge *a quo* and not denied by defendant's counsel, viz. :

1. That the boundaries of *Waterloo* plantation, as set forth in the act of sale to the defendant, were well established at the time of sale.

2. That the lands in the rear of the rear boundary of the plantation were, therefore, considered as part of the *Riverside* plantation.

3. That a short time prior to defendant's purchase of *Waterloo* the owners of *Riverside* plantation were actually placed in possession of the lands lying immediately in the rear, or the rear boundary line of *Waterloo*.

4. That the two small tracts composing these lands were situated, one at the northwest rear corner and the other *at* the northeast rear corner of the *Waterloo* plantation.

From this we understand that, notwithstanding the boundaries of *Waterloo* were, at date of sale to the defendant, fixed and well established natural objects, one of which was the *Riverside* plantation in the rear, certain tracts of land situated in the rear, and at two different points *on the rear line* which had been theretofore considered portions of the *Waterloo*, were actually placed in the possession of the owners of the *Riverside*, a short time prior to defendant's purchase. That it subsequently transpired that the two small tracts at the northeast and northwest rear corners of *Waterloo*, respectively, were public lands, and were taken up under the provisions of the United States Homestead laws since defendant's purchase.

With the exception of the deflection in the rear boundary of *Waterloo* plantation, that is occasioned by these two small tracts, consisting of twenty-nine and 11-100 arpents, the entire boundary is complete.

Taking this deflection in consideration, it appears to create a slight departure from the rules governing sales *per aversionem;* the case being one of a purchaser who had bought under a title *per aversionem,* but who had not actually obtained all the land up *to the boundaries given in the deed.*

It being a sale *per aversionem,* the purchaser was entitled, in case of a survey, to go to the extent of the four boundaries mentioned in the deed. And this is what we understand by the guarded admission of the defendant's counsel. The question is *sui generis,* and comes within the purview of cur decree remanding the case.

Hence we think the defendant is equitably entitled to relief—that is, to the extent of the cost of the opposition and the actual value of the twenty-nine and 11-100 acres of land described.

While there is nothing in the record positively fixing the value of the twenty-nine and 11-100 acres above specified, yet it does appear

that since this litigation arose it has been taken up by homestead settlers, and, presumably, for a small price; and, as we are convinced that it is to the interest of all parties that the litigation should terminate, we will fix the value of said lands at two dollars and fifty cents per acre, the rate of double minimum government lands, and allow the defendant that sum as a proportionate diminution of the purchase price.

We are also of opinion that he should be awarded the cost of the litigation—without, however, disturbing any of the principles of law announced in this or the former opinion in this case; predicating our opinion in this case on the theory that it is *sui generis*.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the defendant in injunction be awarded the sum of seventy-two dollars and seventy-seven cents, as a credit upon the demand of the plaintiff in the writ of seizure and sale, and that all costs be taxed against the said plaintiff in execution and appellee.

## ON APPLICATION FOR REHEARING.

We are satisfied as to all the principles and issues decided in our opinion, and no additional statement is now considered necessary as to them; but we find that our decree is not.altogether as full and complete as it should have been. We will therefore reform and revise it so as to more fully express the judgment of this court.

It is therefore ordered, adjudged and decreed that the judgment appealed from, dissolving the defendant's injunction *in toto*, be annulled and reversed; and it is further ordered and decreed that the defendant's injunction be sustained and perpetuated to the extent of awarding to him a credit of seventy-two dollars and seventy-seven cents ($72.77) on the mortgage indebtedness sought to be collected of him by the executory proceedings, and all costs of both courts, appertaining to the injunction alone, but in all other respects that the injunction be dissolved at the defendant's cost, and the seizure and sale proceeded with.

Rehearing refused.